# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

Ashley Huff and Gregory Rapp, )
individually and on behalf of all others )
similarly situated, )
     )
        Plaintiffs, )
     )
v. )     Case No. 2:17-cv-02320
     )
CoreCivic, Inc., f/k/a Corrections )
Corporation of America, )
     )
        and )
     )
Securus Technologies, Inc. )
     )
        Defendants. )
     )

## UNOPPOSED MOTION OF PLAINTIFFS FOR ORDER CONDITIONALLY CERTIFYING SETTLEMENT CLASS, PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT, DIRECTING DISTRIBUTION OF CLASS NOTICE, SETTING HEARING FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPOINTING CLASS COUNSEL

Plaintiffs Ashley Huff and Gregory Rapp (hereinafter referred to as the "Plaintiffs"), individually and on behalf of the class of individuals they seek to represent (the "Settlement Class"), by and through their counsel of record, move this Court for an Order: (1) certifying the proposed Settlement Class pursuant to Fed. R. Civ. P. 23 for settlement purposes only; (2) preliminarily approving the Settlement Agreement and Release attached hereto as Exhibit 1 (the "Agreement")[1] as fair, reasonable and adequate under Fed. R. Civ. P. 23, subject to a final determination by the Court; (3) approving the appointment of the Plaintiffs as representatives of the Settlement Class for settlement purposes; (4) approving the appointment of Class Counsel for

---

[1] The parties have confirmed in writing their agreement with the form of the settlement agreement attached hereto as Exhibit 1, and are in the process of circulating the Agreement for signatures. Plaintiffs will file a fully-executed version of the Agreement once all signatures are collected.

the Settlement Class for settlement purposes; (5) approving the form of mailed notice to be sent to the members of the Settlement Class; (6) directing the Settlement Administrator to, promptly after entry by the Court of the Preliminary Approval Order, mail the Class Notice to the Class Members by first-class mail to the last known address of such persons; (7) establishing a procedure for members of the Settlement Class to opt out and setting a date, forty-five days (45) after mailing of the Class Notice, after which no member of the Settlement Class shall be allowed to opt out of the Settlement Class; (8) establishing a procedure for the members of the Settlement Class to object to the Settlement and setting a date, forty-five days (45) after mailing of the Class Mail Notice, after which no member of the Settlement Class shall be allowed to object; (9) scheduling a hearing on final approval of this Agreement and establishing a procedure for the members of the Settlement Class to appear at the hearing; and (10) staying this case until further order of the Court, other than as may be necessary to effectuate the Settlement and carry out the terms of the Agreement or the responsibilities related or incidental thereto. In further support hereof, Plaintiffs provide the following Memorandum.[2]

## I.     APPLICABLE LEGAL AUTHORITIES

"Compromises of disputed claims are favored by the courts." *Williams v. First Nat'l. Bank*, 216 U.S. 582, 595 (1910). When a proposed class-wide settlement is reached, it must be submitted to the court for preliminary approval. H. Newberg & A. Conte, *Newberg on Class Actions* (3d ed. 1992) at §11.41, p.11-87. Preliminary approval is the first of three steps that comprise the approval procedure for settlement of a class action. The second step is dissemination of notice of the settlement to all class members. The third step is a settlement approval hearing. *Manual for Complex Litigation Third*, §30.41 (2000).

---

[2] Unless otherwise stated in the memorandum, Plaintiffs incorporate and adopt by reference the defined terms included in the Agreement.

The question presented on a motion for preliminary approval of a proposed class action settlement is whether the proposed settlement is "within the range of possible approval." *Manual for Complex Litigation*, §30.41 at 273. Preliminary approval is merely the prerequisite to giving notice so that the class may be "given the opportunity to address the court as to the reasons the proposed settlement is unfair or inadequate." *In re Plastic Cutlery Antitrust Litigation*, 1998 WL 314655 (E.D. Pa. 1998). Preliminary approval does not require the trial court to answer the ultimate question of whether a proposed settlement is fair, reasonable, and adequate. That determination is made only after notice of the settlement has been given to the members of the class and after they have been given an opportunity to voice their views of the settlement or be excluded from the class. *See* J. Moore, *Moore's Federal Practice* ¶ 23.80[2-1], at 23-479 (2d ed. 1993). The Court will ordinarily grant preliminary approval where the proposed settlement "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval." *In re Motor Fuel Temperature Sales Practices Litigation*, 286 F.R.D. 488, 493 (D. Kan. 2012) (citing *Am. Med. Ass'n v. United Healthcare Corp.,* No. 00 Civ. 2800(LMM), 2009 WL 1437819, at *3 (S.D.N.Y. May 19, 2009). The standards for preliminary approval of a class settlement are not as stringent as those applied for final approval. *Id.*

In considering a potential settlement for preliminary approval purposes, the trial court does not have to reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute, and need not engage in a trial on the merits. *In re Motor Fuel Temperature Sales Practices Litigation*, 286 F.R.D. 488, 493 (D. Kan. 2012) (quoting *Carson v. Am. Brands, Inc.,* 450 U.S. 79, 88 n. 14, 101 S. Ct. 993, 67 L. Ed. 2d 59 (1981)).

Following preliminary approval, Rule 23(e) of the Federal Rules of Civil Procedure provides the mechanism for settling a class action including, as here, through a class certified for settlement purposes only. These include the requirements that the court "direct notice in a reasonable manner to all class members who would be bound by the proposal"; that "[a]ny class member may object to the proposal"; and that the court may grant final approval of the settlement "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e); *see also Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 617 (1997).

## II.    STATEMENT OF THE CASE

Plaintiffs Ashley Huff and Gregory Rapp ("Plaintiffs") filed this lawsuit on June 1, 2017, alleging state and federal wiretap claims against two defendants, CoreCivic, Inc. ("CCA") and Securus Technologies, Inc. ("Securus"). CCA is a Maryland corporation formerly known as Corrections Corporation of America, Inc., and is a private corrections management company that manages prisons, jails, and detention facilities, including a pretrial detention facility in Leavenworth, Kansas ("CCA-Leavenworth"). Securus is a Delaware corporation that contracts with prisons and jails across the nation, including CCA-Leavenworth, to provide telephone and video conferencing services for detainees.

Plaintiffs are individuals who were held by the United States Marshal Service at CCA-Leavenworth beginning on or about October 6, 2015 and August 14, 2014, respectively. Plaintiffs each allege to have had numerous phone conversations with their attorneys in Kansas while housed at CCA-Leavenworth, routinely contacting their attorneys by phone to discuss confidential matters. They assert they did so with the understanding that their conversations were private. Plaintiffs allege that CCA and Securus recorded communications between detainees at CCA-Leavenworth and the outside world, including calls between detainees and their attorneys. Plaintiff

Greg Rapp asserts he submitted a CCA form on December 13, 2016 requesting that calls to his attorney not be recorded, and that CCA confirmed in writing that it would not record such calls in the future. Plaintiffs allege that CCA and Securus recorded seven of Mr. Rapp's subsequent phone calls to his attorney.

In 2016, in an unrelated criminal case, federal District Judge Julie Robinson entered an order for all detention facilities in Kansas and Missouri, including CCA, to immediately cease and desist all audio recording of attorney-client phone calls. Plaintiffs allege that after entry of Judge Robinson's cease and desist order, Defendants continued to record attorney-client telephone calls. Plaintiffs allege that CCA and Securus improperly and without authorization or consent by Plaintiffs and other similarly situated detainees, knowingly recorded confidential phone calls between detainees and their attorneys, and for no legitimate reason related to the facilities' security or public safety.

After Plaintiffs filed suit in June 2017, Defendants moved to dismiss certain aspects of the Plaintiffs' claims. After full briefing on the issues, on March 5, 2018 the Court granted in part and denied in part the Defendants' motions to dismiss (see ECF # 75).

The parties then began extensive written discovery. In total, the parties have served or responded to 78 interrogatories, 197 requests for production of documents, 10 requests for admissions and produced 47,095 pages of documents, including 10.2 gigabytes of data. To maximize efficiency, by agreement the parties also produced in this case 5 depositions taken in a parallel wiretap case pending in federal court in Missouri that involved both Defendants.

In addition, Plaintiffs closely monitored activity in a criminal case, *U.S. v. Black*, 16-cr-20032-JAR, including attending numerous full-day hearings and reviewing dozens of filings, all

of which provided extensive relevant information about the scope of detainee recordings at CCA-Leavenworth.

As the deadline for class certification approached, the parties began to discuss the possibility of mediating the case. The parties jointly asked the Court to stay the case pending settlement discussions, which the Court did on April 2, 2018. The parties were able to reach an agreement over the ensuing months, leading to the instant Settlement.

## III.    THE SETTLEMENT

### A.    *The Settlement Class*

Under the terms of the Agreement, the parties have agreed to a settlement involving a class defined as follows:

> All detainees at Leavenworth Detention Center who, during the period of June 1, 2014 through June 19, 2017, had their attorney-client telephone calls recorded by Defendants: (a) after the detainee requested privatization of his or her attorney's phone number (subclass A); (b) after his or her attorney requested privatization of the attorney's phone number (subclass B); (c) after Judge Robinson's cease and desist order on August 10, 2016, in the case styled *U.S. v. Black*, Case No. 2:16-CR-20032 (subclass C); or (d) after the detainee or his or her attorney otherwise notified one or more Defendants in writing of their attorney-client relationship and provided written notification of the attorney's phone number at issue (subclass D).

### B.    *Terms of the Settlement*

#### 1.    *Consideration and Payments*

Under the terms of the Agreement, the Parties have agreed to settle this matter by creating a Settlement Fund of $1,450,000.00, of which CoreCivic shall fund $1,100,000.00 and Securus shall fund $350,000.00, in exchange for the releases described below. Per the terms of the Settlement, the Fund shall be apportioned as follows:

First, Class Counsel will petition the Court for an award, pursuant to Fed. R. Civ. P 23(h), in the total amount of $498,800 (approximately 34% of the Settlement Fund), which the Court may

award in its sole discretion. This award will be sought to pay for the costs of the third-party Settlement Administrator (RG2), class representative service awards of $5,0000 for both named Plaintiffs, Class Counsel's attorney fees, litigation expenses and class notice costs in excess of the $2,000 contributed by Defendants. Class Counsel's motion seeking this award will be filed no later than ten (10) days before Class Members must object or opt out of the Settlement, and all such filings will be posted to the settlement website administered by RG2. Defendants agree not to object to this request, nor Plaintiffs' request for payment of service awards to the two named Plaintiffs. The requested $5,000 service awards for Plaintiffs Ashley Huff and Greg Rapp would be in recognition of the substantial time, devotion and commitment they have contributed to this litigation, and for their work in prosecuting the claims of the Settlement Class, including, but not limited to appearance at mediation, active involvement in the investigation and discovery process and general assistance in reaching the resolution proposed by the Settlement.

Second, the remaining Settlement Fund, after payment of the award referenced above, shall be provided to Class Members on a pro rata basis as follows:

- $432,000 to be divided among Class Members in subclasses A and B combined, up to a maximum of $10,000.00 per Class Member;

    o Class Counsel believe there are 73 Class Members in subclasses A and B combined;

    o Class Counsel anticipate that Class Members in subclasses A and B who do not opt out will each receive approximately $5,917.50 or more.

- $384,000 to be divided among Class Members in subclass C, up to a maximum of $10,000.00 per Class Member;

    o Class Counsel believe there are 193 Class Members in subclass C;

    o Class Counsel anticipate that Class Members in subclass C who do not opt out will each receive approximately $1,989.50 or more.

- $135,200 to be divided among Class Members in subclass D, up to a maximum of $500 per Class Member;

- o Class Counsel believe there are 273 Class Members in subclass D;

- o Class Counsel anticipate that Class Members in subclass D who do not opt out will each receive approximately $495.50 or more.

Under the terms of the Settlement, in the event that the Settlement Fund, after payment of costs, expenses, and attorneys' fees, is not fully depleted by payments to Class Members as outlined above, any unclaimed amounts shall be donated to Kansas Legal Services.

In the event a Class Member does not cash their settlement check after six (6) months of issue, those checks will be void and those funds will be held in trust by the Settlement Administrator for a period of two (2) years from the date of Final Approval during which the Class Member entitled to such funds can request payment from the Settlement Administrator. Any unclaimed amounts remaining in trust at the close of the two-year period following Final Approval shall be donated to Kansas Legal Services within 30 days of the close of that two-year period.

In addition to the $1,450,000 referenced above, under the terms of the Settlement the Defendants have also agreed to pay up to $2,000 ($1,000.00 by CoreCivic and $1,000.00 by Securus) incurred by the Settlement Administrator for postal charges in mailing out the Class Notice. All other Costs of Settlement Administration shall be paid from the award provided to Class Counsel referenced above.

The actual distribution of payments from the Settlement Fund shall be performed by the Settlement Administrator, who shall mail money orders to all Class Members that did not opt out within thirty (30) days of Final Court Approval. Payment of attorneys' fees to Class Counsel shall be paid within ten (10) days of the deposit of the Settlement Fund amount. For Class Members currently incarcerated within the Bureau of Prisons, the money order for those Class Members will be sent by U.S. Postal Money Order to the Bureau of Prisons collection office in Iowa, for deposit

into that Class Member's commissary account. Class Members not currently incarcerated will have their money order sent to their current address.

2.      *Release in Exchange for Consideration*

In exchange for the consideration paid by Defendants under this Settlement, if a Class Member does not opt out of this Settlement then they agree that Defendants and all other Released Parties (as defined in the Agreement) are released from any and all claims or causes of action arising out of or relating to the monitoring, recording, and/or use of communications (including but not limited to telephone communications, in-person communications, and video communications) at the Leavenworth Detention Center that were, could have been, or should have been asserted against them by any Class Member and any claims or causes of action arising out of or relating to any related facts, conduct, omissions, transactions, occurrences, or matters that were or could have been alleged in this lawsuit.  For the avoidance of doubt, these releases include, but are not limited to, releases of all such claims or causes of action that relate to the monitoring, recording, and/or use of communications that occurred up to and through August 8, 2019.  If this settlement is approved, Class Members that have not opted out also agree they are waiving any and all claims for (1) actual damages; (2) punitive damages; (3) prejudgment interest; (4) and any other relief from CoreCivic or Securus for recording attorney communications at CCA-Leavenworth. The release contained in the Settlement Agreement expressly does not affect the rights of Class Members who timely and properly opt-out of the Settlement, nor does it affect the rights of any non-Class Member.

Under the Settlement, the Court will retain jurisdiction to protect, preserve, and implement the Agreement, including, but not limited to, the release provisions of the Settlement. If the Settlement receives Final Approval, the Agreement shall be the exclusive remedy for any and all

released claims of Class Members and CoreCivic, Securus, and all other Released Parties shall not be subject to liability or expense of any kind to any Class Members except as set forth in the Agreement. Class Members will also be permanently barred from initiating, asserting, or prosecuting any and all released claims against the Released Parties in any court in the United States or any other tribunal.

Upon issuance of the Final Approval Order, Plaintiffs shall file a voluntary dismissal with prejudice, for all claims asserted in this lawsuit.

### 3. Opt Out Procedure

Under the terms of the Settlement, if any Class Member decides they do not want to take part in the Settlement and wants to preserve any claims they may have against the Defendants, they may do so by opting out. To opt out, Class Members must submit an opt-out notice by mailing or delivering such notice in writing to the Settlement Administrator, postmarked no later than forty-five (45) days from the first bulk mailing of the initial notice of this Settlement by the Settlement Administrator. The Class Notice provided to Class Members will provide the specific date by which Class Members may elect to opt out.

Any opt-out notice must state the name, address, and telephone number of the person requesting exclusion. The opt-out notice must also contain a clear statement communicating that such person elects to be excluded from the Settlement, does not wish to participate in the Settlement or receive any portion of the Settlement Payout, and elects to be excluded from any judgment entered pursuant to this Settlement.

Any Settlement Class Member who submits a timely opt-out notice may not participate in the Settlement or object to the Settlement and shall be deemed to have waived any rights or benefits under this Settlement. The Settlement Administrator will report the names appearing on the Opt-

Out List and in the opt-out notices to the Court no less than ten (10) business days prior to the Final Approval Hearing. The Settlement Administrator will also prepare the Final Settlement Class Member List and provide it to the Parties and the Court no less than ten (10) business days prior to the Final Approval Hearing.

4.    *Objection Procedure*

Under the terms of the Settlement, Class Members that do not opt out have the right to object to the Settlement. Each Class Member wishing to object to the Settlement must submit a timely written notice of his or her objection. Such notice shall state: (i) the objector's full name, address, telephone number, and e-mail address, (ii) information identifying the objector as a Settlement Class Member, which shall be (a) a copy of the Initial Notice addressed to him or her, or (b) unequivocal documentary proof that that he or she is within the definition of the Settlement Class described in this Settlement Agreement; (iii) a written statement of all grounds for the objection accompanied by any legal support for the objection; (iv) the identity of all counsel representing the objector; (v) the identity of all counsel representing the objector who will appear at the Final Approval Hearing; (vi) a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection; (vii) a statement confirming whether the objector intends to testify at the Final Approval Hearing; and (viii)  the objector's signature or the signature of the objector's duly authorized attorney or other duly authorized representative (along with documentation setting forth such authorization). These procedures are intended to ensure the efficient administration of justice and the orderly presentation of any Class Member objections to the Settlement Agreement, in accordance with such Class Member's due process rights. Under the Settlement terms, any Class Member intending to object that fails to properly or timely file their objections with the Clerk of the Court, along with the required information and documentation set

forth above, or to serve them as provided above, shall not be heard during the Final Approval Hearing, nor shall their objections be considered by the Court.

To be timely, a Class Member's written notice of an objection in appropriate form must be filed with the United States District Court for the District of Kansas, Courtroom 427, 500 State Avenue, Suite 511, Kansas City, Kansas 66101, no later than forty-five (45) days after the first bulk mailing of the initial Class Notice, and served therewith upon both of the following: Co-Class Counsel Robert Horn and Joseph Kronawitter of Horn Aylward Bandy, LLC; counsel for Defendants, Thomas Kokoruda at Polsinelli PC, Kansas City, Missouri, and Ryan Harding at Husch Blackwell, Jefferson City, Missouri, all at the addresses reflected herein. The Class Notice provided to Class Members will provide the specific date by which Class Members must file their objection.

C.     *Representation*

This case has been competently and vigorously prosecuted and defended. Plaintiffs are represented by Robert A. Horn and Joseph A. Kronawitter of the law firm Horn Aylward & Bandy, LLC, 2600 Grand Blvd., Ste. 1100, Kansas City, MO 64108 and Brian T. Meyers of the Law Offices of Brian Timothy Meyers, 1044 Main Street, Ste. 400, Kansas City, MO 64105 ("Class Counsel").

CoreCivic, Inc. is represented by Thomas G. Kokoruda, Lauren E. Tucker McCubbin, and Amy D. Fitts of the law firm Polsinelli P.C. ("CoreCivic Counsel"). Securus Technologies, Inc. is represented by Ryan Harding, 235 East High St., Suite 200, P.O. Box 1251, Jefferson City, MO 65102, of the law firm Husch Blackwell, LLP ("Securus Counsel"). Plaintiff, CoreCivic, and Securus are represented by counsel with extensive experience in complex and class-action litigation.

D.    *Investigation and Settlement*

As noted in Section II(B) above, in pursuing the claims of the Settlement Class, and in evaluating the merits of the Settlement, Class Counsel have reviewed voluminous data and documents, conducted witness interviews, held meetings and conferences between representatives of the Parties, and investigated the applicable law as applied to the facts regarding the alleged claims of the Settlement Class, the potential defenses thereto, and the damages incurred by the Settlement Class. Class Counsel has formed an adequate investigation of this case, which weighs in favor of settlement approval.

CCA and Securus expressly deny all allegations of wrongdoing made in the Action, and contend that at all relevant times their actions with regard to the subject detainees were proper, appropriate and authorized under the law.

Nevertheless, in an effort to reach a comprehensive settlement of the Action, beginning in August 2018, Class Counsel and CCA Counsel began to engage in extensive arms-length settlement negotiations. The Parties were fully and adequately informed of all facts necessary to evaluate the case for settlement. On May 20, 2019, the parties mediated the case before mediator Kirk Goza. Although the mediation session did not end with a resolution, the parties continued to negotiate the matter through Mr. Goza, reaching a settlement framework on June 10, 2019. Since then, the parties have worked extensively on settlement-related efforts, including developing a written settlement agreement that fully resolves this matter, adequate class notice information, and arranging for the service of an independent settlement administrator.

## IV.    CONDITIONAL CERTIFICATION OF THE SETTLEMENT CLASS

Plaintiffs request certification of the Settlement Class defined above for purposes of obtaining Final Approval of the Settlement. Certification of the Settlement Class is appropriate

under Federal Rules of Civil Procedure 23 for the reasons set forth below. CCA and Securus do not oppose class certification of a Settlement Class under the terms agreed, and for settlement purposes only, but reserve all their objections to class certification.

A.   *The Settlements Satisfy Rule 23(a)*

Under Rule 23(a), a settlement class must meet four requirements: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *In re Urethane Antitrust Litig.*, 251 F.R.D. 629, 633 (D. Kan. 2008). The proposed Settlement Class satisfies all four requirements.

1.   *Numerosity*

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." There is no exact numerical formula for determining whether a class is sufficiently numerous, but it is a determination that must be made by the district court "in light of the particular circumstances of the case…" *Ark. Ed. Ass'n v. Bd. of Educ. of the Portland, Ark. School Dist.*, 446 F.2d 763, 765 (8th Cir.1971); *see also Rex v. Owens ex rel. State of Okla.*, 585 F.2d 432, 436 (10th Cir. 1978).

Here, the proposed Settlement Class consists of five hundred and thirty-nine (539) individuals who were detained at CCA-Leavenworth and that fall within the class definition referred to above. Thus, joinder is impracticable and the numerosity requirement is satisfied.[3]

2.   *Commonality*

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." *See Am. Fin. Sys., Inc. v. Harlow*, 65 F.R.D. 94, 107 (D. Md.1974), cert. denied, 460 U.S. 1083 (1983)

---

[3] Class actions have been routinely certified even where the class amounts to less than one hundred members. *See, e.g., Ark. Educ. Ass'n v. Bd. of Educ.,* 446 F.2d 763, 756-66 (8th Cir. 1971) (20 class members sufficient); *Swanson v. American Consumer Industries,* 415 F.2d 1326, 1333 (7th Cir. 1969) (40 class members sufficient); *Riordan v. Smith Barney,* 113 F.R.D. 60 (N.D. Ill. 1986) (10–29 class members sufficient); *Sala v. Nat'l RR Passenger Corp.,* 120 F.R.D. 494, 497 (E.D. Pa. 1988) (40–50 class members sufficient).

(commonality is not required on every question raised in a class action; rather, Rule 23 is satisfied when the legal question "linking the class members is substantially related to the resolution of the litigation.").

In this case, numerous questions of law and fact are common to the Settlement Class and satisfy the requirement of "commonality." The method of recording calls with respect to all Class Members was essentially uniform, and produced the same type of injury—a state or federal wiretap violation—arising from the recording of attorney-client communications. To be sure, Defendants' ability to assert defenses to such claims, including a consent defense, differs among the class members. However, that issue was addressed by the formation of subclasses that receive graduated payments under the Settlement to take into account the relative strengths and weaknesses of the differing facts underlying the subclasses. Regardless, the uniformity of Defendants' conduct vis-à-vis Class Members (i.e., Defendants' recording of attorney-client calls) creates the legal question "linking the class members" which is substantially related to the resolution of the litigation.

The virtually identical nature of the Class Member's claims is sufficient to satisfy the "commonality" requirement of Rule 23(a)(2).

### 3. *Typicality*

Rule 23(a)(3) requires that "the claims or defenses of the representative parties (be) typical of the claims or defenses of the class."[4] Courts in this District have held:

> This requirement does not mandate . . . that the claims of the representative plaintiffs be identical to those of the other class members. Rather, the Court should look to whether the claims of the representative plaintiff are antagonistic to the claims of the proposed class. "Typicality ensures that the class representative's claims resemble the class's claims to an extent that adequate representation can be expected."

---

[4] The "typicality" requirement, as customarily applied, tends to merge with "commonality." *Gen. Tel. Co. of Southwest. v. Falcon*, 457 U.S. 147, n.13 (1982).

*Swisher v. U.S.,* 189 F.R.D. 638, 640-641 (D. Kan. 1999) (citations omitted), *quoting Edgington v. R.G. Dickinson and Co.,*139 F.R.D. 183, 189 (D. Kan. 1991).

Under this standard, the claims of the Class Plaintiffs are not antagonistic to the claims of the Class Members.

The "typicality" of the Plaintiffs' claims in this case exists also because each Class Member, including each Plaintiff, was allegedly treated the same by the Settling Defendants. That is, Defendants recorded calls for each Class Member that Plaintiffs assert were attorney-client calls, and Defendants assert that the Class Members consented to such recordings.[5] Thus, each Class Member, including Plaintiffs, holds the same claims. The "typicality" requirement of Rule 23(a)(3) is satisfied.

### 4. *Adequate Representation*

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To establish that they will fairly and adequately protect the interests of the class, the representative plaintiffs must show that: (1) they are able to prosecute the action vigorously through qualified counsel and (2) there is no conflict between their interests and those of the class members. *Schreiber v. Nat'l Collegiate Athletic Ass'n*, 167 F.R.D. 169, 175 (D. Kan. 1996); *see also* 1 Newberg, Class Actions, § 3.22 at 198. The potential for disagreement or opposition from certain members of a class is not enough to establish that the representation of the class by the class representative is inadequate. *In re Motor Fuel Temperature Sales Practices Litig.* 271 F.R.D. 221 (D. Kan. 2010). Only where the conflict is "fundamental" and goes to "specific issues in controversy" does a concern about

---

[5] *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183-84 (3d Cir. 2001) ("If the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is established regardless of factual differences.").

adequacy of representation arise. *Id.* (*citing Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003)).

With respect to the proposed Settlement Class, both components of Rule 23(a)(4) are satisfied. First, Class Counsel have substantial experience in the arena of complex and class-action litigation, and are qualified, experienced and have vigorously pursued this Litigation.[6] Second, there is no evidence or indication of a conflict between the interests of the Plaintiffs and the Class Members. Indeed, all Class Members will benefit from the vindication of their asserted right to privileged, confidential communications with their attorneys. On the common issues and relief obtained, Class Members stand to gain as much as the Plaintiffs, and the Class Plaintiffs have advocated as vigorously for the Class Members as they have for themselves.[7] Since the Plaintiffs and Class Members are alleged to have suffered the same injury, and the relief obtained through the Settlements will apply to all Class Members and Plaintiffs, the requirements of Rule 23(a) are met with respect to the proposed Settlement Class.[8]

B.      *Rule 23(b)(3) Standards Are Satisfied*

The proposed Settlements also meet the requirements of Rule 23(b)(3), which allows class certification where common questions of law and fact predominate over individual questions and class treatment is superior to individual litigation. *See, e.g., McGee v. Continental Tire N. Am., Inc.*, 2009 WL 539893 (D.N.J. Mar. 4, 2009). When assessing predominance and superiority, the Court may consider that the class will be certified for settlement purposes only, and that a showing

---

[6] *See* Declarations of proposed Class Counsel, attached hereto as Exhibits 2-4.
[7] *See, e.g., McGee v. Continental Tire N. Am., Inc.*, 2009 WL 539893 (D.N.J. Mar. 4, 2009) (finding Rule 23(a)(4) satisfied where the named plaintiffs advocated as vigorously for absent class members as for themselves).
[8] The uniformity of the proposed Settlement Class here stands in contrast to cases where courts have refused to certify classes under Rule 23(a)(4) because of significant differences among the interests of class members. *See, e.g., Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997) (affirming Third Circuit determination that currently injured and exposure-only members of a proposed asbestos class had divergent interests in structure of settlement fund and thus could not be adequately represented in a single class).

of manageability at trial is not required. *See Amchem*, 521 U.S. at 619-20. The test is "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id.* at 623.

Here, the proposed Settlement Class is sufficiently cohesive. As described above, the Plaintiffs and all Class Members seek redress for claims arising out of the same allegedly unlawful conduct—the recording of phone conversations between detainees and their attorneys. Because claims under the relevant wiretapping statutes arise out of events that occurred uniformly throughout the Settlement Class, common questions predominate over individual questions. Moreover, because Plaintiffs seek conditional certification of the Settlement Class only to effectuate the Settlement, the Court need not consider whether a trial would be unmanageable.[9] Therefore, the proposed Settlement Class is particularly appropriate for certification for settlement purposes.

Furthermore, class resolution is superior to other available methods for the fair and efficient adjudication of this controversy. The Class Members' claims could prove uneconomical for individual action because litigation costs could dwarf potential recovery.[10]

In summary, certification of the proposed Settlement Class is appropriate under Rule 23. Accordingly, Plaintiffs request that the Court conditionally certify the proposed Settlement Class.

## V. <u>PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE</u>

Plaintiffs respectfully submit the Settlement is "within the range of possible approval" and thus, preliminary approval of the Settlement is warranted. Preliminary approval does not require the trial court to answer the ultimate question of whether a proposed settlement is fair, reasonable, and adequate. That determination is made only after notice of the settlement has been given to the

---

[9] *See Anchem*, 521 U.S. at 620.
[10] While the pursuit of claims by an individual may be economically inefficient and cost-prohibitive, the opt-out procedures provide a mechanism for Class Members who are dissatisfied with the Settlements to preserve and pursue individual claims that they may have.

members of the class and after they have been given an opportunity to voice their views of the settlement or be excluded from the class. *See*, *e.g.*, *Moore's Federal Practice* ¶ 23.80[2-1], at 23-479 (2d ed. 1993).

Nonetheless, the terms of the Settlement are fair and provide a complete plan for notice to the Settlement Class, for Class Members to "opt out" of the Settlements, for Class Member objections, for payment to Class Members that do not opt out and for final certification of compliance with the terms of the Settlement. The terms of the Settlement also provide that, if for any reason the Settlement does not become final, the Parties will revert to their positions prior to the execution of the Settlement Agreement and this case will continue as if this motion and accompanying documents were never filed.

A.    *The Terms of the Proposed Settlement Are Fair*

A preliminary review of the terms of the proposed Settlement confirms it is fair. Indeed, the proposed Settlement comes to this Court with a presumption of fairness because Plaintiffs can show:

> (1) That the settlement has been arrived at by arm's-length bargaining; (2) That sufficient discovery has been taken or investigation completed to enable counsel and the court to act intelligently; [and] (3) That the proponents of the settlement are counsel experienced in similar litigation….

4 Newberg, § 11.41.

As to the first point, Class Counsel will submit at the final approval hearing a declaration from the parties' mediator, Kirk Goza, attesting to the fact that the settlement was arrived at through arms-length negotiation. Regarding the sufficiency of Plaintiffs' investigation, that point was discussed above; Class Counsel performed an extensive investigation and workup of this matter, and were poised to seek class certification when the settlement was reached. Finally, there should be no question that both Class Counsel and the Defendants' counsel are all experienced in

class action litigation, and have worked at arms-length to achieve this settlement. Indeed, it has been noted that courts are to give "proper deference to the private consensual decision of the parties," since:

> the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1988*); see also, Marcus v. State of Kansas, Dept. of Revenue*, 209 F. Supp. 2d 1179 (D. Kan. 2002) ("When settlement is reached by experienced counsel after negotiations in adversarial setting, there is initial presumption that settlement is fair and reasonable.").

Here, it is the judgment of the proposed Class Counsel that, in consideration of all factors, the Settlement is beneficial to the Class Members and in their best interests at this stage of the litigation.

B. _The Notice Plan Is Appropriate_

The second step in the class-action settlement process is providing the class with notice of the settlement. Federal Rule of Civil Procedure 23(c)(2) requires the Court to direct to class members the "best notice practicable" under the circumstances, including "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974); *In re Urethane Antitrust Litig.*, 251 F.R.D. 629, 645 (D. Kan. 2008). To comport with due process, notice must be fashioned to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. *Wyandotte Nation v. City of Kansas City, Kansas*, 214 F.R.D. 656, 664 (D. Kan. 2003). As the United States Supreme Court has held, notice by mail provides such "individual notice to all members" in accordance with Rule

23(c)(2). *Eisen* at 173. Where the names and addresses of the class members are easily ascertainable, individual notice through the mail is "clearly the 'best notice practicable." *Id.* at 175. If notice by mail is ordered and addresses are readily available, publication of notice is not necessary and is, in fact, "duplic[ative] and serve[s] no purpose." *See, e.g.*, *United States v. Truckee-Carson Irrigation Dist.*, 71 F.R.D. 10, 18 (D. Nev. 1975). The Federal Judicial Center considers notice reaching 70%-95% of the class to be reasonable. *See* Federal Judicial Center Notice Checklist.[11]

Here, the Parties have agreed to a class notice plan that is designed to be fair, effective and comport with due process, and the content of the notice itself is clear and comprehensible to Class Members. First, as to the Notice plan, the parties have specifically identified the five hundred and thirty-nine (539) people that their records indicate comprise the Settlement Class. This list is referred to as the Preliminary Settlement Class Member List. Indirect notice through publication is not necessary in this case; Class Members will receive direct notice of this Settlement through a copy of the Class Notice sent to their last known address. The parties have obtained contact information for all such individuals, many of whom are currently incarcerated within the Federal Bureau of Prisons ("BOP"). RG2 Administration, Inc. has been retained to serve as the notice and settlement Administrator, responsible for mailing the Class Notice and ultimately, mailing settlement payments.

Using the contact information provided by the Parties, RG2 will mail the Class Notice to all Class Members within forty-five (45) days of the initial approval of this Settlement by the Court, or within such other time as the Court may order. (Exhibit 1, Sec. V(A)). The Class Notice shall be mailed via first class mail through the United States Postal Service, postage pre-paid.

---

[11] *Available at*: http://www.fjc.gov/public/pdf.nsf/lookup/NotCheck.pdf/$file/NotCheck.pdf.

Defendants will pay up to $2,000 for postal charges for mailing out the Class Notice. All additional costs of preparing, mailing, and publishing Class Notice shall be paid from the award provided to Class Counsel. RG2 will secure and maintain a Post Office Box or similar mailing address for the reception of Opt-Out forms or other correspondence related to the Settlement. No later than ten (10) business days prior to the Final Approval Hearing, RG2 shall provide an affidavit to the Court, with a copy to counsel for the Parties, attesting that Class Notice was disseminated in a manner consistent with the terms of the Settlement and in a manner that satisfies due process. (Exhibit 1, Sec. V(D)). As noted above, Class Members shall have the opportunity to opt-out of this Settlement. No less than ten (10) business days prior to the Final Approval Hearing referenced below, RG2 will prepare and provide to the Parties and the Court a list of all members of the proposed Settlement Class that excluded themselves from the Settlement (the "Opt-Out List"), along with the Final Settlement Class Member List. (Exhibit 1, Sec. VI(E)).

Second, as to the form of Class Notice, any notice provided to class members should "clearly and concisely state in plain, easily understood language" the nature of the action; the class definition; the class claims, issues, or defenses; that the class member may appear through counsel; that the court will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion; and the binding effect of a class judgment on class members. *See* Fed. R. Civ. P. 23(c)(2). Here, the parties have prepared a detailed document to serve as the Class Notice, a copy of which is attached hereto as Exhibit 5. The Class Notice informs the Settlement Class of the background of the litigation and the proposed Settlement; describes the relief the proposed Settlement will provide; describes the procedures for participating in the Settlement, opting out of the Settlement, or submitting objections; and advises the Settlement Class that, if they do not opt out, they will be bound by any final judgment in this case, including a release of claims. Thus, the

Class Notice is accurate and informs the Settlement Class of the material terms of the Settlement and their rights pertaining to the Settlement.[12] The Class Notice includes several methods by which Class Members can obtain additional information about the Settlement, including a website containing an explanation of the Settlement terms, providing key Settlement-related documents and providing instructions regarding how Settlement Class Members may Opt-Out.

Plaintiffs respectfully suggest that the notice program outlined above is appropriate under the circumstances, meets the requirements of due process, and distribution of the Class Notice in the manner set forth above is fair, appropriate and the "best notice practicable" under the circumstances.

C.      *CAFA Notice*

One element of the Class Action Fairness Act of 2005 ("CAFA") is a requirement that within ten days after a proposed class-action settlement is filed with the Court, the settling defendant provide appropriate state and federal officials with notice of the proposed settlement, along with particular documents and information. 28 U.S.C. §1715 et seq.

Here, Defendants will provide CAFA notices to the United States Attorney General and the attorney general in Kansas. If the Court grants preliminary approval to the Settlement, Plaintiffs will provide proof of CAFA compliance with their motion for final approval of the Settlements prior to any final fairness hearing.

## VI.      ESTABLISHMENT OF A FINAL APPROVAL AND FAIRNESS HEARING

The third step in the class action settlement process is the fairness hearing, by which the Court may evaluate and grant final approval to the proposed Settlements. At the fairness hearing,

---

[12] *See, e.g., In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (Class notice "need only describe the terms of the settlement generally").

proponents of the Settlement may explain and describe the Settlement's terms and conditions and offer argument in support of Settlement approval; Class Members and/or their counsel may be heard in support of or in opposition to the Settlement.

The parties propose the following schedule for final approval of the Settlements:

| Day 0 | The Court grants Preliminary Approval |
|---|---|
| 45 days after Preliminary Approval | Settlement Administrator to mail Notice to Class Members |
| 80 days after Preliminary Approval | Class Counsel to file their motion for an award of fees, expenses and service awards |
| 90 days after Preliminary Approval | Last day for Class Members to opt-out of Settlement |
| 90 days after Preliminary Approval | Last day for Class Members to file objections to Settlement |
| 100 days or more after Preliminary Approval | The Court must hold a final approval hearing |

## VII.    APPOINTMENT OF SETTLEMENT CLASS COUNSEL

Pursuant to the requirements of Rule 23(g), a Court certifying a case as a class action "must appoint class counsel." Plaintiffs respectfully request that the Court appoint the undersigned counsel, Robert A. Horn, Joseph A. Kronawitter and Brian T. Meyers, as Class Counsel. These attorneys have been appointed class counsel on numerous occasions, and their experience and expertise in class action litigation is set forth on their affidavits, attached hereto as Exhibits 2-4. The experience and qualifications of the proposed Class Counsel have been established, and the proposed class counsel will zealously prosecute the claims of the Class Members.

## VIII. <u>CONCLUSION</u>

The law favors and prefers the compromise and settlement of class-action suits,[13] and settlement is particularly appropriate in complex litigation like this one.[14]

Class Plaintiffs submit this Settlement is fair, reasonable and falls within the range of possible approval."[15] Accordingly, Plaintiffs request the Court enter an order conditionally certifying the Settlement Class, preliminarily approving the Settlement, approving and ordering completion of the Notice Plan, scheduling a final fairness hearing and appointing the counsel for Plaintiffs as Class Counsel.

For the Court's convenience, Plaintiffs have attached hereto as Exhibit 6 a proposed order granting preliminary approval that has been approved by all Parties.

WHEREFORE, Plaintiffs respectfully move the Court for an Order consistent with the foregoing, and for such other relief the Court deems proper.

Respectfully submitted this 23rd day of August, 2019.

---

[13] *See, Schering-Plough Corp. v. FTC*, 402 F.3d 1056 (11th Cir. 2005); 4 Newberg, *Class Actions* § 11.41 (and cases cited therein); *see also New England Health Care Employees Pension Fund v. Woodruff*, 520 F.3d 1255, 1258 (10th Cir. 2008).
[14] As a matter of sound policy, settlement of disputed claims is encouraged. *Officers for Justice v. Civil Service Commission of City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 617 (N.D. Cal. 1979); *Churchill Village, L.L.C. v. General Elec.*, 361 F.3d 566, 576 (9th Cir. 2004) (quoting *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).
[15] *Manual for Complex Litig.*, §30.41 at 273.

Respectfully submitted,

*/s/ Joseph A. Kronawitter*
Robert A. Horn                KS Bar No. 70254
Joseph A. Kronawitter    KS Bar No. 19665
HORN AYLWARD & BANDY, LLC
2600 Grand Boulevard, Suite 1100
Kansas City, MO 64108
Telephone 816-421-0700
Facsimile 816-421-0899
rhorn@hab-law.com
jkronawitter@hab-law.com

Brian Timothy Meyers        KS #70630
Brian C. McCart                KS #78700
LAW OFFICES OF BRIAN TIMOTHY MEYERS
1044 Main Street, Suite 400
Kansas City, Missouri 64105
Telephone: (816) 842-0006
btmeyers@btm-law.com
bmccart@btm-law.com

*Attorneys for Plaintiffs Ashley Huff and Gregory Rapp*

## CERTIFICATE OF SERVICE

I hereby certify that on August 23, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send a notice of electronic filing to all person registered for ECF as of that date.

*/s/ Joseph A. Kronawitter*
Attorney