**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| Ashley Huff and Gregory Rapp, individually and on behalf of all others similarly situated, | )<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | )     Case No. 2:17-cv-02320<br>) |
| CoreCivic, Inc., f/k/a Corrections Corporation of America, et al. | )<br>)<br>) |
| Defendants. | )<br>)<br>) |

## MOTION FOR AWARD OF ATTORNEY'S FEES, EXPENSES AND CLASS REPRESENTATIVE INCENTIVE AWARDS

Plaintiffs Ashley Huff and Gregory Rapp, through their undersigned counsel, respectfully move the Court for an order granting an award of attorney's fees, expenses and class representative incentive awards in conjunction with final approval of the pending class settlement (the "Settlement"). In support, Plaintiffs state as follows:

**I.    WHAT PLAINTIFFS ACHIEVED FOR THE CLASS**

When Plaintiffs began this litigation, they had one goal—hold Defendants accountable for recording phone calls between detainees and their attorneys at CCA-Leavenworth.

With this Settlement, that goal has been obtained. Defendants have already changed their procedures related to detainee-attorney calls in light of the scrutiny this issue has received within the last few years. Now, Defendants have agreed to pay a common settlement fund to class members in the amount of $1,450,000 (the "Settlement Fund") in exchange for a release of wiretap claims surrounding their recording of attorney-client communications. That Settlement Fund will result in class members receiving substantial amounts through this Settlement; many class

1

members will receive close to $6,000 apiece.[1] The average payment to class members is approximately $1,765.00. Those results are the result of diligence by Plaintiffs and Class Counsel in the face of vigorous opposition. The work that went into litigating this case, and the resulting Settlement, has been substantial.

In exchange for the beneficial result they obtained for class members, Plaintiffs and Class Counsel respectfully request payment from the Settlement Fund. First, Plaintiffs request incentive awards in the amount of $5,000 apiece in recognition of their service and effort on behalf of the class members. Like the requested attorney fee, the incentive awards are fair and reasonable given the significant time and attention Plaintiffs have devoted to this litigation. Second, Plaintiffs and Class Counsel request an award reimbursing them $33,540 in litigation expenses they incurred in prosecuting this matter. Finally, Class Counsel request $455,300 in attorneys' fees. The requested fee is approximately 31% of the Settlement Fund (well within the permissible range) and far below Class Counsel's lodestar of $600,000.[2]

No class member has objected to Plaintiffs' fee request. Notice of this Settlement and the requested fee was also provided to more than two dozen state governmental officials; none have objected. The requested fee is reasonable, and should be awarded.

## II. AN ATTORNEY FEE AWARD IS APPROPRIATE

There should be no doubt Class Counsel are entitled to seek an attorney fee. Federal Rule of Civil Procedure 23(h) provides that, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or the parties' agreement." Here, through the Settlement Agreement, Defendants contractually agreed to pay

---

[1] The payment to Subclass A and B class members will be at least $5,917.50.
[2] *See* Section II(B)(3) below.

the fee/expense/incentive award ordered by the Court up to $498,800.[3] That settlement agreement language creates a right for Plaintiffs to seek attorneys' fees and costs that is independent of any underlying fee-shifting statute or common-law principle.[4]

Aside from this contractual right to seek an attorney fee, the requested attorney fee is also "authorized by law"[5] under two different methodologies. One approach is the traditional "lodestar" method that developed in the context of statutory fee shifting cases, where the Court determines the reasonable fee using reasonable rates and time spent, with a multiplier used where appropriate.[6] The second approach is the "percentage-of-the-fund" method which allows a person who creates a common fund to be reimbursed from that fund for attorneys' fees and litigation expenses.[7] Class Counsel's requested fee is reasonable under both methods.

A. *The Requested Fee Is Reasonable Under a Percentage of the Fund Method*

The common fund doctrine "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched at the successful litigant's expense." *Brown v. Phillips Petroleum Co.,* 838 F.2d 451, 454 (10th Cir. 1988)(quoting *Boeing Co. v. Van Gemert,* 444 U.S. at 478. When the common benefit is a fund, fees are "extracted from the predetermined damage recovery rather than obtained from the losing party." *Id.* Thus when a class action yields a fund for class members, fees may be paid from the recovery. *Boeing Co.,* 444 U.S. at 481, 100 S. Ct. at 750.[8]

---

[3] *See* Settlement Agreement, Doc. 140-2, p. 5, Sec. III(A)(1).
[4] *See Wing v. Asarco Inc.*, 114 F.3d 986, 988 (9th Cir. 1997) (where the parties agreed, in their class-action settlement agreement, that the defendant would pay the reasonable attorney's fee set by the Court, the only restriction on the district court's fee analysis was that the fee must be "reasonable")
[5] FRCP 23(h).
[6] *See Uselton v. Commercial Lovelace Motor Freight, Inc.,* 9 F.3d 849, 853 (10th Cir.1993).
[7] *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478, 100 S. Ct. 745, 749, 62 L. Ed. 2d 676 (1980)), *cert. denied,* 488 U.S. 822, 109 S. Ct. 66, 102 L. Ed. 2d 43 (1988).
[8] *See also Gottlieb v. Barry,* 43 F.3d 474, 482 (10th Cir. 1994); *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993) ("When awarding attorney's fees in a class action, a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved.") (citation omitted).

On this point, the Tenth Circuit has recognized:

> When there is a common fund created by a settlement, courts have applied one of two methods of determining reasonable attorney's fee awards: by a percentage of the fund, or by the lodestar method developed in the statutory fee shifting cases. We have recently implied "a preference for the percentage of the fund method" in common fund cases. "In all cases, whichever method is used, the court must consider the twelve *Johnson* factors."

*Rosenbaum v. MacAllister*, 64 F.3d 1439, 1445 (10th Cir. 1995)(citing *Gottlieb v. Barry,* 43 F.3d 474, 486 (10th Cir.1994)).[9]

Here, defendants CoreCivic, Inc. and Securus Technologies, Inc. have agreed to pay funds in the amounts set forth below:

| **Defendant** | **Settlement Amount** |
|---|---|
| CoreCivic | $1,100,000 |
| Securus | $350,000 |
| **TOTAL** | **$1,450,000** |

The 31% attorney fee award sought by Plaintiffs and Class Counsel is reasonable and within the range of percentage-fee awards authorized in this Circuit.[10] A review of previous class actions demonstrates that courts have historically not been hesitant to award fees in the range of

---

[9] In addition to the Tenth Circuit, almost every other Circuit has recognized use of the percentage method in common fund cases. *See In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 304-08 (1st Cir. 1995); *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2nd Cir. 2000); *In re General Motors Corp. Pick-Up Truck Fuel Prods. Liab. Litig.*, 55 F.3d 768, 821-22 (3d Cir. 1995); *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 975 (7th Cir. 1991); *Johnston v. Comerica Mortg., Corp.* 83 F.3d 241, 244-245 (8th Cir. 1996); *In re Washington Public Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1296 (9th Cir. 1994); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989); *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1270 (D.C. Cir. 1993).

[10] *See Lucken Family Ltd. P'ship , LLLP v. Ultra Resources, Inc.*, No. 09-cv-01543-REB-KMT, 2010 WL 5387559, at *5-6 (D. Colo. Dec. 22, 2010) ("The customary fee awarded to class counsel in a common fund settlement is approximately one third of the total economic benefit bestowed on the class.") (citing, inter alia, *Vaszlavik v. Storage Technology Corp.,* No. 95-B-2525, 2000 WL 1268824, at *10 (D. Colo. Mar. 9, 2000) (stating that "requested fee of 30% of the settlement is well within the ordinary range of common fund awards," and "[a] 30% common fund award is in the middle of the ordinary 20%-50% range and is presumptively reasonable"); *Cimarron Pipeline Construction, Inc. v. National Council on Compensation,* Nos. CIV 89-822-T, CIV 89-1186-T, 1993 WL 355466, at *2 (W.D. Okla. June 8, 1993) (noting that "[f]ees in the range of 30-40% of any amount recovered are common in complex and other cases taken on a contingent fee basis," and finding that "attorneys' fees of 33 1/3% of the common fund created by the efforts of counsel for the Class are in line with comparable other cases, [and] consistent with prevailing case law of this circuit…").

20% to 50% of the common fund, depending upon the circumstances of the case.[11] That fact is echoed by one of the preeminent secondary authorities on class action litigation, *Newberg on Class Actions*, which states:

> No general rule can be articulated on what is a reasonable percentage of a common fund. Usually 50% of the fund is the upper limit on a reasonable fee award from a common fund in order to assure that the fees do not consume a disproportionate part of the recovery obtained for the Class, although somewhat larger percentages are not unprecedented.[12]

Here, even the full amount of the award, including expenses and plaintiff incentive fees, only amounts to 34% of the fund amount, which is clearly within the range of reasonableness.

In addition to the reasonableness of the fee vis-à-vis guidance from other cases, the lack of opposition is another indicator that the requested fee is perceived to be reasonable. The Class Notice mailed to all 530+ class members specifically stated:

1. Class Counsel will seek court approval of an award consisting of attorneys' fees, costs, litigation expenses, class notice costs, Costs of Settlement Administration expenses and class representative incentive awards in the total amount of $498,800 (approximately 34% of the Settlement Fund). Defendants agree not to object to this request.

To date, no class member has objected to the fee request. Notice of the fee request was also provided to more than two dozen attorney generals and governmental officials as part of Defendants' notice pursuant to 28 U.S.C. § 1715. No such official has asserted an objection to the requested fee.

Plaintiffs and Class Counsel submit that under these circumstances, the requested fee

---

[11] S*ee, e.g., In re U.S. Bancorp Litig.,* 291 F.3d 1035 (8th Cir. 2002) (upholding fee award amounting to **36%** of fund)*; In re Ikon Office Solutions, Inc.,* 194 F.R.D. 166 (E.D. Pa. 2000) **(30%** of $111 million recovery); *In re Combustion, Inc.,* 968 F. Supp. 1116 (W.D. La. 1997) **(36%** of $127 million recovery); *In re Charter Comm 'ns, Inc.*, No. 4:02-CV-1186, 2005 WL 4045741, *14(E.D. Mo. June 30, 2005) (quoting National Economic Research Associates study of securities class actions: "**Regardless of case size, fees average approximately 32 percent of the settlement**."); *In re United Telecommunications, Sec. Litig.*, No. 90-2251-0, 1994 WL 326007, at *3 (D. Kan. June 1, 1994) (**33.3%** of $ 28,000,000 settlement); *In re Activision Securities Litigation*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989)(observing fee range was typically between 20-50%).
[12] *Newberg on Class Actions*, 3d Ed., 1992, §14.03.

5

award is reasonable in a percentage-of-the-fund analysis.

award is reasonable in a percentage-of-the-fund analysis.

### B. The Requested Fee Is Reasonable Under the Johnson Factors

The Tenth Circuit has held that in addition to utilizing the percentage methodology in common fund cases, the Court should also give some consideration to the twelve "*Johnson* factors."[13] In *Johnson v. Georgia Highway Express, Inc*,[14] the Fifth Circuit established twelve factors for consideration when evaluating an award of attorneys' fees: (1) the novelty and difficulty of the questions presented by the case; (2) the amount involved and the results obtained; (3) the time and labor required; (4) the skill requisite to perform the legal service properly; (5) the experience, reputation and ability of the attorneys; (6) the preclusion of other employment by the attorneys due to the acceptance of the case, (7) the customary fee; (8) whether the fee is fixed or contingent; and (9) awards in similar cases. Not all twelve factors will apply in every case.[15]

#### 1. The Novelty and Difficulty of the Issues

This case clearly presented novel and difficult issues. In almost every reported wiretap case Class Counsel could locate involving imprisoned or incarcerated plaintiffs, the plaintiffs lost. Involuntary confinement adds a unique procedural hurdle to prosecuting a wiretap case, and Defendants made it clear they put great stock in their consent defense. Despite that obstacle, Plaintiffs and Class Counsel were able to avoid dismissal at the outset of the case and were girding for lengthy class certification and summary judgment briefing when the case was resolved. This factor weighs in favor of the requested fee.

---

[13] *Gottlieb*, 43 F.3d at 483 citing *Johnson,* 488 F.2d at 717-19.
[14] 488 F.2d 714 (5th Cir. 1974), cited with approval in *Gottlieb v. Barry*, 43 F.3d 474 (10th Cir. 1994).
[15] *See In re Sprint Corp. ERISA Litig.,* 443 F. Supp. 2d 1249, 1270 (D. Kan. 2006) (noting the inapplicability of three of the *Johnson* factors).

### 2. *The Amount Involved and the Results Obtained*

The benefits provided by the Settlement are real and tangible. The permissible recovery for a statutory penalty for a federal wiretap violation is between $1 and $10,000, subject to the Court's discretion. Here, many of the class members will receive more than half of the maximum amount (Subclasses A and B), and the average class member payment is approximately $1,765.00. Those successful results are despite the fact that all of the class members were subject to a substantive defense related to "consent," and many of the class members may not have had claims survive summary judgment. This factor weighs in favor of the requested attorney fee.

### 3. *Time/Labor Required*

This factor of the *Johnson* analysis is to be distinguished from strict application of the "lodestar" methodology. When considering attorneys' fees outside of the strict lodestar context, such as here, the focus is *not* on the "necessity and reasonableness of every hour" of the lodestar, but on the broader question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys.[16] Such a results-oriented focus "lessens the possibility of collateral disputes [regarding time records] that might transform the fee proceeding into a second major litigation."[17]

Although Class Counsel were successful in achieving favorable results through this settlement, a substantial amount of time and expense was required. Defendants produced numerous depositions and a vast amount of evidence, but it was up to Class Counsel to make sense of that evidence; to organize and then cross-reference the information in order to provide proof of actual wrongdoing by Defendants. In addition, Class Counsel spent substantial time culling through

---

[16] *See In re Thirteen Appeals,* 56 F.3d 295, 307 (1st Cir. 1995).
[17] *Id.*

transcripts and filings in the *U.S. v. Black*[18] litigation for relevant information, and attended numerous hearing sessions in *Black* to collect useful information.

Thus, it should be no surprise that Class Counsel spent a considerable amount of time prosecuting this case. Class Counsel has set forth the hours expended by each law firm, and provided each law firm's lodestar.[19] Class Counsel collectively spent more than 1,800 attorney and paralegal hours pursuing and prosecuting the claims of the Plaintiffs and the class members:

| **Plaintiff's Counsel** | **Partner/Associate/Paralegal Hours** | **Value** |
|---|---|---|
| HORN AYLWARD & BANDY, LLC | 1,672 | $538,120 |
| LAW OFFICES OF BRIAN MEYERS | 187 | $75,650 |

Plaintiffs respectfully suggest that given the relief obtained by this suit, the hours expended are reasonable and appropriate. In compiling their hours, Class Counsel exercised billing judgment to exclude redundancies and avoid duplicative work. However, even to the extent that two or more of Class Counsel worked on the same task, that does not equate unreasonable billing because "[t]ime spent by two attorneys on the same general task is not ... per se duplicative. Careful preparation often requires collaboration and rehearsal."[20] The Declarations of Class Counsel demonstrate that, based on their successful litigation experience in courts across the country, the requested fee is reasonable.

### 4. & 5. Skills Required/ Experience, Reputation and Ability of the Attorneys

The skills, experience, reputation and ability of Class Counsel also weigh in favor of the requested attorneys' fees.[21] It is well-known that a class action of this type is, by its very nature,

---

[18] D. Kan. Case No. 2:16-cr-20032-JAR.
[19] *See* Kronawitter Declaration, Exhibit 1; Meyers Declaration, Exhibit 2.
[20] *Myers v. Aitkin Cty.*, No. CV 14-473 (JRT/LIB), 2017 WL 1134575, at *3 (D. Minn. Mar. 27, 2017) (quoting *Rodriguez–Hernandez v. Miranda–Velez*, 132 F.3d 848, 860 (1st Cir. 1998)).
[21] The qualifications of Class Counsel were set forth in the prior declarations submitted in conjunction with preliminary approval, but are attached hereto for the Court's convenience as Exhibits 3-5.

complicated and time-consuming. A law firm undertaking representation of a plaintiff class case must be prepared to make a tremendous investment of time, energy, and resources. That fact was especially apparent in this case, which spanned several years. Further, due to the contingent nature of the customary fee arrangement, lawyers must be prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind. The demands and risks of this type of litigation overwhelm the resources, and deter participation, of many plaintiff law firms. Class Counsel involved in this Settlement have experience prosecuting complex consumer class actions, and committed in early 2017 to see this case through to conclusion.

The skills required of Plaintiffs' counsel in this case ran the gamut from complex case management and civil discovery to highly specialized class-action expertise. That expertise and skill was necessitated by the fact that the defendants are large, well-financed companies represented by large, sophisticated and capable defense firms.

6. *Preclusion of Other Employment*

The opportunity costs to Class Counsel was substantial because their commitment to this litigation severely limited their ability to pursue other cases. The significant hours devoted to this lawsuit necessarily precluded Class Counsel from spending that time on other cases, which weighs in favor of an award.[22]

7 & 8. *Customary Fee/Whether the Fee is Fixed or Contingent*

In cases such as this, attorneys' fees are normally contingent upon a successful outcome.[23] In prosecuting plaintiff class actions, Class Counsel customarily enter into contingent attorney fee agreements providing for a percentage of any recovery. In this case, the Plaintiffs executed retainer agreements that allow Plaintiffs' counsel to receive a contingent fee in line with the 31%

---

[22] *See In re Sprint Corp. ERISA Litig.,* 443 F. Supp. at 1270.
[23] *See Ramah Navajo Chapter v. Babbit, et al.,* 50 F. Supp. 2d 1091, 1104 (D.N.M. 1999)

fee sought from the fund. Thus, the fees requested are consistent with the contingency percentage typical in the marketplace and consistent with the actual agreement between Plaintiffs and Class Counsel. This *Johnson* factor weighs in favor of granting the requested attorneys' fees.

9. *Awards in Similar Cases*

The requested attorney fee is 31% of the total fund; the combined fee/expense/incentive award is 34% of the total fund. As noted above, fees in percentage-of-the-fund cases range from 20-50% of the fund. Thus, compared to other common fund cases, Class Counsel's requested fee is reasonable.

Application of the *Johnson* factors clearly indicates the requested attorney fee is reasonable.

D. *Intangible Value Considerations*

Aside from the benefits obtained for Class members, meritorious class actions provide far broader benefits in two respects that cannot be calculated in purely monetary terms and which Class Counsel respectfully suggest should not be overlooked by this Court. As explained by the Sixth Circuit in *Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 287 (6th Cir. 2016):

> Consumer class actions, furthermore, have value to society more broadly, both as deterrents to unlawful behavior—particularly when the individual injuries are too small to justify the time and expense of litigation—and as private law enforcement regimes that free public sector resources.[24] If we are to encourage these positive societal effects, class counsel must be adequately compensated—even when significant compensation to class members is out of reach (such as when contact information is unavailable, or when individual claims are very small).[25]

---

[24] *See Gascho* at fn. 6. *(*William B. Rubenstein, *On What A "Private Attorney General" Is—and Why It Matters,* 57 Vand. L. Rev. 2129, 2168 (2004) ("[Class counsel's] clients are not just the class members, but the public and the class members; their goal is not just compensation, but deterrence and compensation."); Myriam Gilles & Gary B. Friedman, *Exploding the Class Action Agency Costs Myth: The Social Utility of Entrepreneurial Lawyers,* 155 U. Pa. L. Rev. 103, 106 (2006) ("[T]he deterrence of corporate wrongdoing is what we can and should expect from class actions."); William B. Rubenstein, *Why Enable Litigation?: A Positive Externalities Theory of the Small Claims Class Action,* 74 UMKC L. Rev. 709, 724–25 (2006) ("By enabling litigation, the class action has the structural consequence of dividing law enforcement among public agencies and private attorneys general and of shifting a significant amount of that enforcement to the private sector.")).

[25] *See Gascho* at fn. 7. (Brian T. Fitzpatrick, *Do Class Action Lawyers Make Too Little?,* 158 U. Pa. L. Rev. 2043, 2047 (2010) (concluding that courts "should not be concerned about compensating class members in small-stakes class actions and, instead, should be concerned only with fully incentivizing class action lawyers to bring as many

10

Similarly, in *In re Whirlpool Corp. Front-Loading Washer Products Liability Litigation*, Case No. 1:08-WP-65000 (MDL 2001), 2016 WL 5338012 at *23 (N.D. Ohio Sept. 23, 2016) the Court stated:

> Attorneys who take on class action matters serve a benefit to society and the judicial process by enabling...small claimants to pool their claims and resources." *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 1029, 1043 (S.D. Ohio 2001). Moreover, "[s]ociety's interests are clearly furthered by the private prosecution of civil cases which further important public policy goals," *In re Southeastern Milk Antitrust Litig.*, 2013 WL 2155387 at *5 (E.D. Tenn. May 17, 2013), such as prosecuting tort claims regarding allegedly defective products. *See In re Sears, Roebuck & Co. Front–loading Washer Prod. Liab. Litig.*, 2016 WL 4765679 at *21 ("Congress has determined that it is in the public interest to 'encourage warrantors to establish procedures whereby consumer disputes are fairly and expeditiously settled through informal dispute settlement mechanisms.' 15 U.S.C. § 2310(a)(1). Thus, this settlement encourages manufacturers to expeditiously identify and cure defects in their products, regardless of whether the defect manifests itself in every item sold.").

Class action lawsuits like this case further public interest by forcing companies to follow the law. Plaintiffs' lawsuit provides meaningful relief to hundreds of Class members, and no doubt brings some level of deterrent effect to similar companies. Such efforts are worthy of being compensated.

### III. PLAINTIFFS' COSTS WERE REASONABLY INCURRED AND SHOULD BE REIMBURSED

With respect to costs and expenses, an order allowing reimbursement is proper and warranted. Plaintiffs' overall costs total approximately $33,540.00.[26] Each of the cost/expense categories underlying this request are appropriate for payment, such as filing fees, costs associated with the

---

cost-justified actions as possible" because "the only function they serve is deterrence"); Hailyn Chen, Comment, *Attorneys' Fees and Reversionary Fund Settlements in Small Claims Consumer Class Actions,* 50 UCLA L. Rev. 879, 892 (2003) (arguing that courts should not limit attorney's fees to a percentage of actual claims because doing so will often "result in a fee that is so small as to prevent class action attorneys from pursuing such cases, which serve primarily a regulatory and deterrent function")).

[26] *See* Declaration of Co-Class Counsel Joseph Kronawitter, Exhibit 1.

11

settlement administrator and electronic legal research.[27] Because these expenses are of the type routinely charged to paying clients, Plaintiffs are entitled to an award reimbursing them for these costs.

## IV.     THE CLASS REPRESENTATIVES ARE ENTITLED TO INCENTIVE AWARDS

Plaintiffs respectfully request an order allowing incentive awards to be paid to plaintiffs Ashley Huff and Gregory Rapp in the amount of $5,000 each. No class member has objected to these awards[28] and these awards are fair and reasonable in light of the Plaintiffs' involvement in this litigation. The class members would not benefit from the relief provided by this lawsuit if not for the work of the two named plaintiffs. The time an individual devotes to a lawsuit which inures to the common benefit of the class warrants entitlement to an incentive award "above and beyond what the typical class member is receiving."[29] Plaintiff Gregory Rapp started this litigation by contacting counsel. Mr. Rapp had numerous calls, meetings and interactions with Class Counsel, gathered relevant information and actively assisted in the investigation of this case. The same can be said for Plaintiff Ashley Huff, who had numerous in person and telephone conferences with Class Counsel, actively assisted the investigation of this case, came to Kansas City from California to attend mediation and has been responsive to Class Counsel's requests at all times. Ms. Huff and Mr. Rapp have attested to the time they have spent on this case, their understanding of the terms of the settlements, their duties as class representatives and their belief that the

---

[27] *Case v. Unified School Dist. No. 233, Johnson County, Kan.*, 157 F.3d 1243, 1257-1258 (10th Cir. 1998); *Godinet v. Management and Training Corp.*, 182 F. Supp. 2d 1108, 1114 (D. Kan. 2002).
[28] The Class Notice specifically informed class members about the requested class representative incentive awards. *See* Court-approved notice, Exhibit 6, ¶ 12.
[29] *In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d at 1271 (awarding $5,000 incentive award to each of four class representatives); *see also Cimarron Pipeline Constr., Inc.*, 1993 WL 355466, at *2 (W.D. Okla. June 8, 1993) (awarding $10,000 incentive award to each of three class representatives); *Camp v. The Progressive Corp.*, No. Civ. A. 01-2680, 2004 WL 2149079, at *7 (E.D. La. 2004) (approving up to $10,000 in incentive awards to class representative and other plaintiffs participating in the litigation).

12

settlements are fair, reasonable and in the best interests of the class members they represent.[30] In short, the two named plaintiffs did everything necessary to protect the interests of the class. Such efforts should not go uncompensated.

## V.  CONCLUSION

Plaintiffs respectfully suggest the requested award for attorney's fees, expenses and incentive awards is fair, reasonable and warranted. Plaintiffs pray the Court for an order consistent with the foregoing, and for such other relief the Court deems just.

Respectfully submitted,

*/s/ Joseph A. Kronawitter*
Robert A. Horn          KS Bar No. 70254
Joseph A. Kronawitter   KS Bar No. 19665
HORN AYLWARD & BANDY, LLC
2600 Grand Boulevard, Suite 1100
Kansas City, MO 64108
Telephone 816-421-0700
Facsimile 816-421-0899
rhorn@hab-law.com
jkronawitter@hab-law.com

Brian Timothy Meyers    KS #70630
Brian C. McCart         KS #78700
LAW OFFICES OF BRIAN TIMOTHY MEYERS
1044 Main Street, Suite 400
Kansas City, Missouri 64105
Telephone: (816) 842-0006
btmeyers@btm-law.com
bmccart@btm-law.com

*Attorneys for Plaintiffs Ashley Huff and Gregory Rapp*

---

[30] *See* affidavits of the class representatives, attached hereto as Exhibit 7 and Exhibit 8.

## CERTIFICATE OF SERVICE

      I hereby certify that on December 27, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send a notice of electronic filing to all person registered for ECF as of that date.

                                                 */s/ Joseph A. Kronawitter*
                                                 Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on December 27, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send a notice of electronic filing to all person registered for ECF as of that date.

*/s/ Joseph A. Kronawitter*
Attorney