IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| Ashley Huff and Gregory Rapp, | ) | |
| individually and on behalf of all others | ) | |
| similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 2:17-cv-02320 |
| | ) | |
| CoreCivic, Inc., f/k/a Corrections | ) | |
| Corporation of America, et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFFS' MOTION AND MEMORANDUM IN SUPPORT OF FINAL
APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiffs move the Court for an order granting final approval to their class action

settlement with CoreCivic f/k/a Corrections Corporation of America and Securus Technologies,

Inc. ("Defendants"). In further support, Plaintiffs state as follows:

**I.     OVERVIEW OF SETTLEMENT**

Defendants have agreed to pay a common settlement fund to Class Members in the

amount of $1,450,000 (the "Settlement Fund") in exchange for a release of claims surrounding

their recording of attorney-client communications. The Settlement Fund will result in class

members receiving substantial amounts; many class members will receive almost $6,000 apiece.[1]

The average payment to class members is approximately $1,765.00.

Plaintiffs respectfully submit that final approval is appropriate. This Court already found

the settlement to meet the requirements of Rule 23 for purposes of both settlement class

certification and preliminary fairness to class members. *See* Order, Doc. 146. Since that order, no

information has come to light that would suggest final approval is not warranted. Indeed, the

---

[1] The payment to Subclass A and B class members will be at least $5,917.50.

1

opposite is true—class member reaction to the Settlement is overwhelmingly positive, with only 8 class members lodging an objection (a 1.4% objection rate) and only seven (7) class members deciding to opt out of the Settlement (a 1.1% opt out rate). In addition, the reaction of state and federal officials to the Settlement indicates no fairness concerns. Specifically, pursuant to 28 U.S.C. § 1715, notice was sent to the attorney general of each state at issue, and the United States Attorney General, *viz.*:

- William Barr, United States Attorney General
- Steve Marshall, Alabama Attorney General
- Leslie Rutledge, Arkansas Attorney General
- Mark Brnovich, Arizona Attorney General
- Xavier Becerra, California Attorney General
- Phil Weiser, Colorado Attorney General
- William Tong, Connecticut Attorney General
- Ashley Moody, Florida Attorney General
- Christopher Carr, Georgia Attorney General
- Tom Miller, Iowa Attorney General
- Kwame Raoul, Illinois Attorney General
- Curtis Hill, Indiana Attorney General
- Derek Schmidt, Kansas Attorney General
- Andy Beshear, Kentucky Attorney General
- Jeffrey Landry, Louisiana Attorney General
- Dana Nessel, Michigan Attorney General
- Keith Ellison, Minnesota Attorney General
- Eric Schmitt, Missouri Attorney General
- Jim Hood, Mississippi Attorney General
- Josh Stein, North Carolina Attorney General
- Wayne Stenehjem, North Dakota Attorney General
- Doug Peterson, Nebraska Attorney General
- Letitia James, New York Attorney General
- Dave Yost, Ohio Attorney General
- Mike Hunter, Oklahoma Attorney General
- Ellen Rosenblum, Oregon Attorney General
- Josh Shapiro, Pennsylvania Attorney General
- Alan Wilson, South Carolina Attorney General

- Jason Ravnsborg, South Dakota Attorney General
- Herbert Slatery III, Tennessee Attorney General
- Ken Paxton, Texas Attorney General
- Mark Herring, Virginia Attorney General
- Patrick Morrisey, West Virginia Attorney General
- Josh Kaul, Wisconsin Attorney General[2]

These state officials were told about the Settlement and the relief afforded by the Settlement, and provided with the relevant settlement documents and pleadings. Not one of these attorneys general filed an objection to the Settlement. If the Settlement was unfair and unreasonable, these governmental officials could have stated as much.[3] They have not.

The positive response to the Settlement by class members, and governmental officials, speaks volumes about the fairness of the Settlement. The Settlement easily passes muster as "fair, reasonable and adequate," and no credible argument has been made against final approval of the Settlement.

## II.   **APPLICABLE LEGAL STANDARDS**

### A.   *SETTLEMENT IN GENERAL*

When a settlement is reached by experienced counsel after negotiations in an adversarial setting, there is a presumption that the settlement is fair and reasonable.[4] Indeed, counsel's judgment as to the fairness of the agreement is entitled to "substantial weight,"[5] and the court should not substitute its "business judgment for that of counsel absent evidence of fraud or overreaching."[6]

---

[2] Plaintiffs will provide the Court with evidence that Defendants properly completed the CAFA notice process prior to the final approval hearing.

[3] Objections or intervention in class action settlements by state officials is not unknown. *See, e.g.,* Order, *In re TD Ameritrade Accountholder Litig.*, No. C 07-2852, (N.D. Cal. Oct. 23, 2009).

[4] *Marcus v. State of Kansas, Dept. of Revenue*, 209 F. Supp. 2d 1179, 1182 (D. Kan. 2002); *see also Trief v. Dun & Bradstreet Corp.*, 840 F. Supp. 277, 281 (S.D.N.Y. 1993) (noting that, absent evidence of fraud or overreaching, courts "consistently have refused to act as Monday morning quarterbacks in evaluating the judgment of counsel").

[5] *Law v. National Collegiate Athletic Ass'n*, 108 F. Supp. 2d 1193, 1196 (D. Kan. 2000).

[6] *Seiffer v. Topsy's Intern., Inc.,* 70 F.R.D. 622, 626 (D. Kan. 1976).

Settlement is a favored method for resolving disputes,[7] and this Court's decision on settlement approval should be influenced by the strong federal policy of encouraging settlement of civil litigation.[8] This policy applies as strongly to class actions.[9] In fact, settlement is especially favored in class actions because it minimizes litigation expenses and reduces the strain on judicial resources.[10] The federal courts have addressed the relationship between the policy in favor of class-action settlements and the scope of judicial inquiry:

> Voluntary out of court settlement of disputes is highly favored in the law…The court will not, therefore, substitute its own judgment for the good faith negotiations of experienced counsel…. The Court should not turn the settlement hearing into a trial or rehearsal of the trial…. Thus the trial court has a limited scope of review for determining fairness. The very purpose of settlement is to avoid trial of sharply disputed issues and the cost of protracted litigation … The Court may limit its fairness proceeding to whatever is necessary to aid it in reaching a just and informed decision…. An evidentiary hearing is not required.[11]

B.    *CLASS SETTLEMENT APPROVAL*

Approval of a class action settlement can occur in a two-stage process. First, the court makes a preliminary fairness evaluation of the proposed settlement.[12] If the court is satisfied as to the certifiability of the class and the results of its initial inquiry into the fairness, reasonableness, and adequacy of the settlement, the court will direct that notice be given to the class of a formal fairness hearing alerting class members of their rights to express their views

---

[7] *See TGB, Inc. v. Bendis,* 36 F.3d 916, 923-924 (10th Cir. 1994).

[8] *See Stanspec Corp. v. Jelco, Inc.,* 464 F.2d 1184, 1187 (10th Cir. 1972); *see also Sears v. Atchison, Topeka, Santa Fe Ry. Co.,* 749 F.2d 1451, 1455 (10th Cir. 1984), *cert. denied,* 471 U.S. 1099 (1985).

[9] *See, e.g., Williams Foods, Inc. v. Eastman Chem. Co.,* No. 99C16680, 2001 WL 1298887, at *2 (D. Kan. Aug. 8, 2001) (applying Rule 23 class action principles to a state class action and noting that "[s]ettlement is especially favored in class actions because it minimizes litigation expenses of all parties and reduces the strain on judicial resources."); *Isby v. Bayh,* 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation").

[10] *Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir. 1977) ("Particularly in class action suits, there is an overriding public interest in favor of settlement."); *In re Dept. Of Energy Stripper Well Exemption Lit.,* 653 F. Supp. 108, 115 (D. Kan. 1986) ("It is in the interests of the courts and the parties that there should be an end to litigation, and the law favors the peaceful settlement of controversies.").

[11] *In re Agent Orange Product Liability Litigation,* 597 F. Supp. 740, 758-760 (E.D.N.Y 1985), *aff'd.,* 818 F.2d 226 (2nd Cir. 1987); *Bowling v. Prizer, Inc.,* 143 F.R.D. 141 (S.D. Ohio 1992); *Cotton,* 559 F.2d at 1330-32.

[12] *See* Manual for Complex Litigation § 21.632, at 320 (4th ed. 2004).

on the settlement.[13] This first step has been completed—the Court granted preliminary approval to the settlement,[14] and the Class Plaintiffs have successfully provided notice in accord with the Court-approved class notice plan.[15]

At the second stage of the class settlement approval process, pursuant to Federal Rule of Civil Procedure 23(e) the court may give final approval to a class settlement upon a finding that the settlement satisfies the requirements of Rule 23(e) and is "fair, reasonable, and adequate."[16] The Tenth Circuit has outlined four factors that must be considered in assessing whether a proposed class settlement is fair, reasonable and adequate:

    (1)     whether the proposed settlement was fairly and honestly negotiated;

    (2)     whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;

    (3)     whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and

    (4)     the judgment of the parties that the settlement is fair and reasonable.[17]

## III.    <u>STATEMENT OF THE CASE</u>

Plaintiffs Ashley Huff and Gregory Rapp ("Plaintiffs") filed this lawsuit on June 1, 2017, alleging state and federal wiretap claims against two defendants, CoreCivic, Inc. ("CCA") and Securus Technologies, Inc. ("Securus"). CCA is a Maryland corporation formerly known as Corrections Corporation of America, Inc., and is a private corrections management company that manages prisons, jails, and detention facilities, including a pretrial detention facility in Leavenworth, Kansas ("CCA-Leavenworth"). Securus is a Delaware corporation that contracts

---

[13] *See* Manual for Complex Litigation. § 21.633, at 321-322; *see also Marcus,* 209 F. Supp. 2d at 1181.
[14] *See* Doc. 146.
[15] *See* Affidavit of the Settlement Administrator, RG2 Administration, Ex. 2 hereto.
[16] *Jones v. Nuclear Pharmacy, Inc.,* 741 F.2d 322, 324 (10th Cir. 1984).
[17] *Rutter & Wilbanks Corp. v. Shell Oil Co.,* 314 F.3d 1180, 1188 (10th Cir. 2002); *Epstein v. Wittig,* No. 03-4081, 2005 WL 3276390, at *6 n.21 (D. Kan. Dec. 2, 2005).

with prisons and jails across the nation, including CCA-Leavenworth, to provide telephone and video conferencing services for detainees.

Plaintiffs are individuals who were held by the United States Marshal Service at CCA-Leavenworth beginning on or about October 6, 2015 and August 14, 2014, respectively. Plaintiffs each allege to have had numerous phone conversations with their attorneys in Kansas while housed at CCA-Leavenworth, routinely contacting their attorneys by phone to discuss confidential matters. They assert they did so with the understanding that their conversations were private. Plaintiffs allege that CCA and Securus recorded communications between detainees at CCA-Leavenworth and the outside world, including calls between detainees and their attorneys. Plaintiff Greg Rapp asserts he submitted a CCA form on December 13, 2016 requesting that calls to his attorney not be recorded, and that CCA confirmed in writing that it would not record such calls in the future. Plaintiffs allege that CCA and Securus recorded seven of Mr. Rapp's subsequent phone calls to his attorney.

In 2016, in an unrelated criminal case, federal District Judge Julie Robinson entered an order for all detention facilities in Kansas and Missouri, including CCA, to immediately cease and desist all audio recording of attorney-client phone calls. Plaintiffs allege that after entry of Judge Robinson's cease and desist order, Defendants continued to record attorney-client telephone calls. Plaintiffs allege that CCA and Securus improperly and without authorization or consent by Plaintiffs and other similarly situated detainees, knowingly recorded confidential phone calls between detainees and their attorneys, and for no legitimate reason related to the facilities' security or public safety.

After Plaintiffs filed suit in June 2017, Defendants moved to dismiss certain aspects of the Plaintiffs' claims. After full briefing on the issues, on March 5, 2018 the Court granted in part and denied in part the Defendants' motions to dismiss (*see* Doc. 75).

The parties then began extensive written discovery. In total, the parties have served or responded to 78 interrogatories, 197 requests for production of documents, 10 requests for admissions and produced 47,095 pages of documents, including 10.2 gigabytes of data. To maximize efficiency, by agreement the parties also produced in this case 5 depositions taken in a parallel wiretap case pending in federal court in Missouri that involved both Defendants.

In addition, Plaintiffs closely monitored activity in a criminal case, *U.S. v. Black*, 16-cr-20032-JAR, including attending numerous full-day hearings and reviewing dozens of filings, all of which provided extensive relevant information about the scope of detainee recordings at CCA-Leavenworth.

As the deadline for class certification approached in this case, the parties began to discuss the possibility of mediation. The parties jointly asked the Court to stay the case pending settlement discussions, which the Court did on April 2, 2018.

In pursuing the claims of the Settlement Class, and in evaluating the merits of the Settlement, Class Counsel reviewed voluminous data and documents, conducted witness interviews, held meetings and conferences between representatives of the Parties, and investigated the applicable law as applied to the facts regarding the alleged claims of the Settlement Class, the potential defenses thereto, and the damages incurred by the Settlement Class. Class Counsel formed an adequate investigation of this case, which weighs in favor of settlement approval.

CCA and Securus expressly deny all allegations of wrongdoing made in the Action, and contend that at all relevant times their actions with regard to the subject detainees were proper, appropriate and authorized under the law.

Nevertheless, in an effort to reach a comprehensive settlement of the Action, beginning in August 2018, Class Counsel and CCA Counsel began to engage in extensive arms-length settlement negotiations. The Parties were fully and adequately informed of all facts necessary to evaluate the case for settlement. On May 20, 2019, the parties mediated the case before mediator Kirk Goza. Although the mediation session did not end with a resolution, the parties continued to negotiate the matter through Mr. Goza, reaching a settlement framework on June 10, 2019. Since then, the parties have worked extensively on settlement-related efforts, including developing a written settlement agreement that fully resolves this matter, adequate class notice information, and arranging for the service of an independent settlement administrator.

## IV.  THE SETTLEMENT

### A.  *The Settlement Class*

Under the terms of the Agreement, the parties have agreed to a settlement involving a class defined as follows:

> All detainees at Leavenworth Detention Center who, during the period of June 1, 2014 through June 19, 2017, had their attorney-client telephone calls recorded by Defendants: (a) after the detainee requested privatization of his or her attorney's phone number (subclass A); (b) after his or her attorney requested privatization of the attorney's phone number (subclass B); (c) after Judge Robinson's cease and desist order on August 10, 2016, in the case styled *U.S. v. Black*, Case No. 2:16-CR-20032 (subclass C); or (d) after the detainee or his or her attorney otherwise notified one or more Defendants in writing of their attorney-client relationship and provided written notification of the attorney's phone number at issue (subclass D).

B.      *Terms of the Settlement*

      1.      *Consideration and Payments*

Under the terms of the Agreement, the Parties have agreed to settle this matter by creating a Settlement Fund of $1,450,000.00, of which CoreCivic shall fund $1,100,000.00 and Securus shall fund $350,000.00, in exchange for the releases described below. Per the terms of the Settlement, the Fund shall be apportioned as follows:

First, Class Counsel petitioned the Court for an award, pursuant to Fed. R. Civ. P 23(h), in the total amount of $498,800 (approximately 34% of the Settlement Fund),[18] which the Court may award in its sole discretion. This award was sought to pay for the costs of the third-party Settlement Administrator (RG2), class representative service awards of $5,0000 for both named Plaintiffs, Class Counsel's attorney fees, litigation expenses and class notice costs in excess of the $2,000 contributed by Defendants. The requested $5,000 service awards for Plaintiffs Ashley Huff and Greg Rapp, if approved, would be in recognition of the substantial time, devotion and commitment they have contributed to this litigation, and for their work in prosecuting the claims of the Settlement Class, including, but not limited to appearance at mediation, active involvement in the investigation and discovery process and general assistance in reaching the resolution proposed by the Settlement.

Second, the remaining Settlement Fund, after payment of the award referenced above, shall be provided to Class Members on a pro rata basis as follows:

- $432,000 to be divided among Class Members in subclasses A and B combined, up to a maximum of $10,000.00 per Class Member;
  - Class Counsel believe there are 73 Class Members in subclasses A and B combined;

---

[18] *See* Motion for Attorney Fees and Expenses, Doc. #158.

- o   Class Counsel anticipate that Class Members in subclasses A and B who do not opt out will each receive approximately $5,917.50 or more.

- $384,000 to be divided among Class Members in subclass C, up to a maximum of $10,000.00 per Class Member;

  - o   Class Counsel believe there are 193 Class Members in subclass C;

  - o   Class Counsel anticipate that Class Members in subclass C who do not opt out will each receive approximately $1,989.50 or more.

- $135,200 to be divided among Class Members in subclass D, up to a maximum of $500 per Class Member;

  - o   Class Counsel believe there are 273 Class Members in subclass D;

  - o   Class Counsel anticipate that Class Members in subclass D who do not opt out will each receive approximately $495.50 or more.

Under the terms of the Settlement, in the event that the Settlement Fund, after payment of costs, expenses, and attorneys' fees, is not fully depleted by payments to Class Members as outlined above, any unclaimed amounts shall be donated to Kansas Legal Services.

In the event a Class Member does not cash their settlement check after six (6) months of issue, those checks will be void and those funds will be held in trust by the Settlement Administrator for a period of two (2) years from the date of Final Approval during which the Class Member entitled to such funds can request payment from the Settlement Administrator. Any unclaimed amounts remaining in trust at the close of the two-year period following Final Approval shall be donated to Kansas Legal Services within 30 days of the close of that two-year period.

In addition to the $1,450,000 referenced above, under the terms of the Settlement the Defendants also agreed to pay $2,000 ($1,000.00 by CoreCivic and $1,000.00 by Securus) incurred by the Settlement Administrator for postal charges in mailing out the Class Notice. All

other Costs of Settlement Administration shall be paid from the award provided to Class Counsel referenced above.

The actual distribution of payments from the Settlement Fund shall be performed by the Settlement Administrator, who shall mail money orders to all Class Members that did not opt out. For Class Members currently incarcerated within the Bureau of Prisons, the money order for those Class Members will be sent by U.S. Postal Money Order to the Bureau of Prisons collection office in Iowa, for deposit into that Class Member's commissary account. Class Members not currently incarcerated will have their money order sent to their current address.

2.      *Release in Exchange for Consideration*

In exchange for the consideration paid by Defendants under this Settlement, if a Class Member does not opt out of this Settlement, they agree that Defendants and all other Released Parties (as defined in the Agreement) are released from any and all claims or causes of action arising out of or relating to the monitoring, recording, and/or use of communications (including but not limited to telephone communications, in-person communications, and video communications) at the Leavenworth Detention Center that were, could have been, or should have been asserted against them by any Class Member and any claims or causes of action arising out of or relating to any related facts, conduct, omissions, transactions, occurrences, or matters that were or could have been alleged in this lawsuit. For the avoidance of doubt, these releases include, but are not limited to, releases of all such claims or causes of action that relate to the monitoring, recording, and/or use of communications that occurred up to and through August 8, 2019. If this settlement is approved, Class Members that have not opted out also agree they are waiving any and all claims for (1) actual damages; (2) punitive damages; (3) prejudgment interest; (4) and any other relief from CoreCivic or Securus for recording attorney

communications at CCA-Leavenworth. The release contained in the Settlement Agreement expressly does not affect the rights of Class Members who timely and properly opt-out of the Settlement, nor does it affect the rights of any non-Class Member.

Under the Settlement, the Court will retain jurisdiction to protect, preserve, and implement the Agreement, including, but not limited to, the release provisions of the Settlement. If the Settlement receives Final Approval, the Agreement shall be the exclusive remedy for any and all released claims of Class Members and CoreCivic, Securus, and all other Released Parties shall not be subject to liability or expense of any kind to any Class Members except as set forth in the Agreement. Class Members will also be permanently barred from initiating, asserting, or prosecuting any and all released claims against the Released Parties in any court in the United States or any other tribunal.

Upon issuance of the Final Approval Order, Plaintiffs shall file a voluntary dismissal with prejudice, for all claims asserted in this lawsuit.

3.    *Opt Outs*

Under the terms of the Settlement, if any Class Member decided they did not want to take part in the Settlement and wanted to preserve any claims they had against the Defendants, they had the right to opt out. Under this Court's Order granting preliminary approval to the Settlement, Class Members had to post mark their opt-outs by January 8, 2020. The Settlement Administrator received seven (7) opt-outs, a list of which will be provided to the Court.

4.    *Objections*

Under the terms of the Settlement, Class Members that did not opt out had the right to object to the Settlement. Under this Court's Order granting preliminary approval to the Settlement, Class Members had to post mark their objections by January 8, 2020. The

undersigned is aware of eight (8) Class Member objections, each of which will be addressed in a brief filed separate from this motion.

## V.    APPLICATION OF FRCP 23(e)

### A.    *Rule 23(e)(1)*

The parties previously provided the Court with information sufficient to enable it to determine that providing notice to the proposed class was appropriate. The notice plan was conducted in accordance with this Court's preliminary approval order, and Plaintiffs have attached hereto the affidavit of RG2 Administration, the Settlement Administrator, attesting to that fact. A brief summary of the process is as follows:

First, the parties started with the specific list of Class Members they had agreed on during the settlement process. After this Court granted preliminary approval, Class Counsel independently verified contact information for each Class Member within the federal Bureau of Prisons system, and that contact information was provided to RG2. Class Counsel did not have contact information for roughly two dozen Class Members.

Second, as noted in the RG2 Affidavit attached hereto as Exhibit 2, for the approximately two dozen Class Member for which Class Counsel did not have contact information, RG2 ran those Class Member names through an online service to obtain contact information.

Next, Class Counsel sought assistance from the Probation Office for the District of Kansas to ensure contact information for each Class Member was accurate. The helpful information provided by the Probation Office was sent to RG2 so it could update its database as to contact information for some Class Members that were being tracked through the Probation Office.

Then, approximately one week before the Class Notice was mailed, Class Counsel rechecked each Class Member name against the BOP system to find any Class Members that had been recently released from BOP custody. That updated contact information was provided to RG2.

On November 8, 2019, RG2 mailed the Class Notice using the most current contact information for each Class Member.[19] When some Class Notices came back undeliverable, RG2 searched for additional contact information for those Class Members and remailed Class Notices using that updated information.

In addition to direct notice, RG2 has hosted a settlement website where settlement-related information can be viewed and downloaded by Class Members, including the opt out and objection forms.

Class Counsel submit that the notice plan approved by this Court has been faithfully carried out and Class Members have received the best notice practicable.

B.        _Rule 23(e)(2)_

Since the proposed settlement would bind Class Members that do not opt out, Plaintiffs submit that the elements of Rule 23(e)(2) are satisfied:

a. The two class representatives and Class Counsel adequately represented the Class Members, and no Class Member contends otherwise. As noted in Section III above, Plaintiffs and Class Counsel vigorously and fully analyzed the claims and defenses in this

---

[19] Ex. 2.

case. Plaintiffs Huff and Rapp were actively involved in the litigation through investigation, discovery and the mediation and settlement process.[20]

b.  The Settlement was negotiated at arm's length, through the services of mediator Kirk Goza. An affidavit from Mr. Goza, attesting to the settlement process, is attached hereto as Exhibit 1.

c.  The relief provided for the class is adequate, taking into account:

   i.  *the costs, risks, and delay of trial and appeal*;

      Pursuant to the federal wiretap act, the most a plaintiff can receive is $10,000.00 in statutory damages, plus attorney fees.  Here, there is a risk that there will be no future relief to the class members without this settlement—the Court has made no finding on the merits of this case, and the defendants believe strongly that their consent defense applies to most, if not all, class members. Under this settlement, class members will receive compensation in the very near future, not at some distant time in the future after several more years of litigation and appeals.

   ii. *the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;*

      The parties' proposal to distribute settlement funds is reasonable and adequate. The parties propose direct payments, with no claim form requirement from class members; if class members do nothing, they will receive payment. The parties propose to send money orders to class members that are not currently incarcerated. Class members currently

---

[20] *See* affidavits of Ashley Huff and Greg Rapp, attached to Doc. #158 as Exhibits 7 and 8.

within the Bureau of Prisons system will have their settlement funds deposited into their commissary account. Class members are also allowed to contact the Settlement Administrator to direct their payment elsewhere. Class members have up to *two years* from the date of final approval to claim their funds from the Settlement Administrator. Any unclaimed funds will be donated to Kansas Legal Services, a non-profit law firm and community education organization helping low- and moderate-income people in Kansas.

iii.   *The terms of any proposed award of attorney's fees, including timing of payment;*

Class Counsel petitioned the Court for an award, pursuant to Fed. R. Civ. P 23(h), in the total amount of $498,800 (approximately 34% of the Settlement Fund) to pay for the costs of the third-party Settlement Administrator (RG/2), class representative service awards of $5,0000 for both named Plaintiffs, Class Counsel's attorney fees, litigation expenses and class notice costs in excess of the $2,000 contributed by Defendants. Class Counsel's motion seeking this award was filed December 27, 2019 (Doc. 158), and posted to the settlement website administered by RG/2. That fee motion was timed in that manner so that Class Members had the opportunity to review the fee motion prior to filing any objections. The requested $5,000 service awards for Plaintiffs Ashley Huff and Greg Rapp are in recognition of the substantial time, devotion and commitment they contributed to this litigation, and for their work in prosecuting the claims

of the Settlement Class. Payments to Class Counsel and the Plaintiffs would occur close in time to the payments made to Class Members.

    iv.    *Any agreement required to be identified under Rule 23(e)(3);*

There are no other agreements made in connection with the settlement, other than the Settlement Agreement and prior versions of the Agreement.

d.  The Settlement treats class members equitably relative to each other. Based upon the agreed class member list, Class Counsel anticipate: Class Members in subclasses A and B who do not opt out will each receive approximately $5,917.50 or more; Class Members in subclass C who do not opt out will each receive approximately $1,989.50 or more, and Class Members in subclass D who do not opt out will each receive approximately $495.50 or more. This progressive payment structure is based upon the relative strengths and weaknesses of the claims by class members within the four subgroups such that, class members that have the strongest claims (i.e., subclasses A and B) in terms of the facts and the potential defenses to their claims receive the largest payments, while class members that have what appear to be weaker claims (subclasses C and D) receive less. The final result is an equitable division of the settlement proceeds.

C.    *Rule 23(e)(3)*

As noted above, there are no other agreements made in connection with the settlement, other than the Agreement and prior versions of the Agreement.

D.    *Rule 23(e)(4)*

Because this Court did not previously certify this case as a class action, Rule 23(e)(4) is not applicable to this settlement.

   E.   _Rule 23(e)(5)_

The Court's order granting preliminary approval set forth a detailed procedure for Class Members to assert objections, pursuant to FRCP 23(e)(5). Class members received direct mail notice of the Settlement and had ample opportunity to either opt-out of the Class or object to the Settlement. Only **1.1%** of the Class opted-out of the Settlement, and **only eight Class members objected to the Settlement.** In an age of professional, serial objectors, this is an amazing statistic that cannot be overlooked.[21] Without doubt, the reaction of the Class indicates that, at least from their perspective, the Settlement is fair and reasonable.

## VI.   **APPLICATION OF THE FAIRNESS FACTORS**

After consideration of the Rule 23(e) requirements, the Tenth Circuit has outlined four factors that must be considered in assessing whether a proposed class settlement is fair, reasonable and adequate:

   (1)   whether the proposed settlement was fairly and honestly negotiated;

   (2)   whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;

   (3)   whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and

   (4)   the judgment of the parties that the settlement is fair and reasonable.[22]

   A.   _The Settlement Was Fairly and Honestly Negotiated_

---

[21] _DeBoer v. Mellon Mortg. Co._, 64 F.3d 1171, 1178 ("The fact that only a handful of class members objected to the settlement similarly weighs in its favor."); _Allianz_, 2001 WL 1336640, at *17-*19 ("we may not ignore the near absence of objection"); _EEOC v. McDonnell Douglas Corp._, 894 F. Supp. 1329, 1335 (E.D. Mo. 1995) ("With respect to the class members' opinions, the Court finds it significant that fewer than twenty percent of the Eligible Claimants filed timely objections to the proposed Consent Decree."); _Cotton_, 559 F.2d at 1331 (the number of objectors is a factor to be considered in assessing fairness); _Prudential I_, 962 F. Supp. at 537-38.

[22] _Rutter & Wilbanks Corp. v. Shell Oil Co._, 314 F.3d 1180, 1188 (10th Cir. 2002); _Epstein v. Wittig_, No. 03-4081, 2005 WL 3276390, at *6 n.21 (D. Kan. Dec. 2, 2005).

The Settlement comes to this Court with a presumption of fairness because Plaintiffs can show:

> (1) That the settlement has been arrived at by arm's-length bargaining; (2) That sufficient discovery has been taken or investigation completed to enable counsel and the court to act intelligently; [and] (3) That the proponents of the settlement are counsel experienced in similar litigation....

4 Newberg, § 11.41.

As to the first point, attached hereto as Exhibit 1 is the declaration from the parties' mediator, Kirk Goza, attesting to the fact that the settlement was arrived at through arms-length negotiation. Regarding the sufficiency of Plaintiffs' investigation, that point was discussed in Section III above—Class Counsel performed an extensive investigation and workup of this matter, and were poised to seek class certification when the settlement was reached.

B.    _Whether Serious Questions of Law and Fact Exist_

There is no dispute that serious questions of law and fact existed when the parties reached the Settlement. Defendants have contended from the outset their belief that the vast majority of Class Members waived any wiretap claims by consenting to the recording of calls. Although this argument was not ruled on by this Court, Class Counsel are unaware of any reported case where a court found in favor of an inmate/detainee on a wiretap claim in the context of incarceration.

C.    _Whether an Immediate Recovery Outweighs the Possibility of Future Relief After Protracted and Expensive Litigation_

Litigating this action through trial would certainly be expensive and time-consuming. Defendants would have no doubt contested class certification, and any class certification ruling was susceptible to a permissive appeal to the Tenth Circuit, which would have only prolonged this matter. Then, discovery and trial on the merits, followed by the inevitable post-trial motions

and appeal, would have extended for years. Clearly, the complexity and expense of further litigation was great, and weighs in favor of an immediate recovery through the Settlement.

In addition, the risks of maintaining this litigation as a class action through trial and appeal weigh in favor of approving this Settlement with its certain outcome, especially where, as here, Class Members had the right to opt-out and pursue their own remedy if they so desired. By reaching this Settlement, the parties have avoided protracted litigation and established a means for a prompt resolution of Class member claims against the Defendants. Given the alternative of a very long, complex trial and appeal process — as well as the substantial risks involved — the availability of prompt relief under the Settlement is highly beneficial to the Class. *Prudential II*, 148 F.3d at 318; *see also Snell v. Allianz Life Ins. Co. of N. Am.*, 2000 WL 1336640 at *17 ("The prospect of intractable litigation … counsels an amicable resolution of this dispute.").

   D.    *The Judgment of the Parties That the Settlement Is Fair and Reasonable*

There should be no question that both Class Counsel and the Defendants' counsel are all experienced in class action litigation, and have worked at arms-length to achieve this settlement. Indeed, it has been noted that courts are to give "proper deference to the private consensual decision of the parties," since:

> the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1988).[23]

---

[23] *See also, Marcus*, 209 F. Supp. 2d at 1179 (D. Kan. 2002) ("When settlement is reached by experienced counsel after negotiations in adversarial setting, there is initial presumption that settlement is fair and reasonable.").

Here, it is the judgment of Class Counsel that, in consideration of all factors, the Settlement is beneficial to the Class Members and in their best interests at this stage of the litigation.

## VII.   <u>CONCLUSION</u>

Class action lawsuits are an important and valuable part of the legal system when they permit the fair and efficient resolution of legitimate claims of numerous parties by allowing the claims to be aggregated into a single action against a defendant that has allegedly caused harm.[24] A settlement will usually not be considered a total win for either side.[25] Rather, the essence of any settlement is compromise; compromise "between the maximum possible recovery and the inherent risks of litigation. The test is whether the settlement is adequate and reasonable and not whether a better settlement is conceivable."[26] Class Plaintiffs respectfully suggest that the pending settlement strikes a balance between polarized positions, and is truly fair, adequate and reasonable.

Dated: January 17, 2020        Respectfully submitted,

       */s/ Joseph A. Kronawitter*
       Robert A. Horn       KS Bar No. 70254
       Joseph A. Kronawitter   KS Bar No. 19665
       HORN AYLWARD & BANDY, LLC
       2600 Grand Boulevard, Suite 1100
       Kansas City, MO 64108
       Telephone 816-421-0700
       Facsimile 816-421-0899
       rhorn@hab-law.com

---

[24] *See* 28 U.S.C. §1711(a).
[25] *In Re Mexico Money Transfer Litigation*, 164 F. Supp. 2d 1002, 1014 (N.D. Ill. 2000).
[26] *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 258 (D. Del. 2002) (citation omitted); *see also E.E.O.C. v. Hiram Walker & Sons, Inc.,* 768 F.2d 884, 889 (7th Cir. 1985); *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 282-3 (D. Colo. 1997).

jkronawitter@hab-law.com

Brian Timothy Meyers          KS #70630
Brian C. McCart               KS #78700
LAW OFFICES OF BRIAN TIMOTHY MEYERS
1044 Main Street, Suite 400
Kansas City, Missouri 64105
Telephone: (816) 842-0006
btmeyers@btm-law.com
bmccart@btm-law.com

*Attorneys for Plaintiffs Ashley Huff and Gregory Rapp*

## CERTIFICATE OF SERVICE

I hereby certify that on January 17, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send a notice of electronic filing to all person registered for ECF as of that date.

/s/ Joseph A. Kronawitter
Attorney